### CAROLINA LUMBER CO. v. GROSE, et al.
No. 60-185-E.

Circuit Court Duval County.

June 27, 1960.

Rhydon C. Lantham, Jacksonville, for plaintiff.

Robinson & Randle, Jacksonville, for defendants.

WILLIAM H. MANESS, Circuit Judge.

This cause was heard by the court on May 31, 1960, upon the amended complaint of plaintiff, Carolina Lumber Co., a corporation, for the foreclosure of an asserted lien for materials furnished to defendant, Nifong Construction, Inc., a corporation, which were incorporated in a residence built by said corporation for defendants, Ernest L. Grose, and wife, on their land. The Michigan Surety Co., a corporation, surety on a labor and materials payment bond, as well as a performance bond, covering this work, was also named a party defendant. The owners and the surety filed a general denial of the allegations of the amended complaint but the corporate contractor made no appearance and filed no motion or answer and no default judgment has been entered against it; however, its president was called as a witness.

The disposition of this controversy hinges on whether or not the defendant-owner and the surety are entitled to a $2,000 credit for a cash payment made by the contractor to plaintiff on July 22, 1959, out of a progress payment made by the owner on July 13, 1959.

The controlling facts, most of which are undisputed, are now found by the court as follows —

1.   That the contractor began the Grose job on April 16, 1959, and at that time it was already indebted to plaintiff on several other jobs and was winding up some jobs that month and starting others but none as large as the Grose job.

2.   That between April 17th and July 22nd, plaintiff furnished all but $72.23 (amount of last materials furnished 8-15-59) of the $3,402.90 worth of materials furnished and incorporated into the Grose residence, no part of which has been paid (unless the $2,000 cash payment of July 22nd must be credited to this amount) ; that a claim of lien was duly perfected August 15, 1959; that during said period, the contractor paid plaintiff $6,000 by six checks of $1,000 each, including one dated June 18th, and one dated June 27th, both of which were returned by the bank uncollected for "insufficient funds"; that all of those six checks were credited to other jobs and the contractor's general account, including the two worthless checks; that at the time the two worthless checks were given, the contractor was indebted to plaintiff for several thousand dollars and plaintiff knew the contractor was not paying his bills promptly; that when the June 18th check was given to the plaintiff, plaintiff's Mr. Morris sat down with the contractor, went over the various accounts, and the contractor directed that plaintiff credit it to the "Baron job", the "Wallace job" and the "Rosenblatt job", which was done on June 23rd; that prior to the time the June 27th check was received by plaintiff through the U.S. mail, the contractor had promised some more money on the Baron job and the contractor gave no additional instructions as to how it should be credited so plaintiff on June 29th credited it to the "Baron job" on the basis of prior conversations and promises; that sometime between June 18th and June 29th the contractor told plaintiff it had about $6,000 due from the Grose job and that when this was received it would make a payment to plaintiff on that job; that plaintiff knew of the several jobs the contractor had going and knew that the Grose job was the largest and that nothing had been paid thereon.

3.   That the two $1,000 checks were known to the plaintiff to be worthless at least from July 1st to July 22nd during which time they were redeposited one or more times and one was replaced by plaintiff's check on July 10th and the other on July 16th; that during this time plaintiff advised the contractor that unless those checks were made good promptly, they would be turned over to the plaintiff's attorney for collection; that finally, on July 22, 1959, the contractor took $2,000 in cash from a pay-

ment made by the owner on the Grose job and delivered it to plaintiff's bookkeeper (Mrs. Jordan) in exchange for the two worthless checks; that in making the exchange the contractor only said "I want my old checks back" and gave no instructions as to how this $2,000 should be credited; that plaintiff credited the $2,000 from the Grose job to the same accounts that had been credited with the two worthless checks; and that at the time the $2,000 was paid in cash in exchange for said checks, the plaintiff knew, or should have known, that the source of the $2,000 was a progress payment on the Grose job — but that no credit was given on that account.

It is conceded that under the laws of Florida, it is the duty of a materialman, *having knowledge of the source of a payment* made to it by a contractor, to credit that account which will reduce the potential liability of the owner or the surety on the contractor's bond. Barnett v. Concrete Placing Co., Fla. App., 120 So. 2d 628; Standard Accident Insurance Company v. Duval Lumber Co., 126 So. 643. This court is of the opinion that *such knowledge* need not be actual but, if all the surrounding circumstances are such as to put a reasonable and prudent person on notice as to the source of such payment, may be constructive.

In this case the materialman's knowledge of the financial difficulties of the contractor, the giving of two worthless checks, the delay in the effective collection thereof, the materialman's knowledge of the contractor's various jobs acquired in its efforts to collect its several accounts, the statement or repeated promises of the debtor-contractor that it had about $6,000 coming on the Grose job, and other circumstances, are ample to support the inference that plaintiff had actual knowledge that the source of the $2,000 cash payment was from the Grose job, even in the face of direct testimony denying such knowledge, and are more than ample to constitute such circumstances as would put plaintiff on notice as to its source.

Being charged with knowledge of the source of the payment of $2,000 on July 22nd, plaintiff was legally bound to apply that sum to the Grose account — unless relieved from doing so by the fact that the actual payment was made by the contractor and accepted by plaintiff for the purpose of redeeming two worthless checks for which credit had been given to other accounts.

In the absence of an express agreement to the contrary, the giving of a check by a debtor to cover an obligation to the payee is not a payment or discharge of the obligation. The obligation is not discharged until the check is paid. See 24 Fla. Jur. 532, Payment, section 10. Therefore, the delivery of the two worth-

less checks and the subsequent credits given to the "Baron job", "Wallace job", and the "Rosenblatt job", did not operate to discharge any part of the contractor's obligation to plaintiff for materials supplied these jobs. The worthless checks themselves were at most written evidence of the contractor's obligation, but the primary evidence of such obligation was and still is the unpaid accounts themselves and a plea of payment based on the worthless checks would be of no avail to the contractor. Furthermore, at the time the $2,000 cash payment was made and the worthless checks returned to the contractor, the sums previously credited to the accounts on these jobs had necessarily been redebited on the books of the plaintiff. It follows, therefore, that the legal position of plaintiff was in no way altered by the surrender of the worthless checks themselves and there was no impairment of the rights of the owner and the surety on the contractor's bond to have the $2,000 cash payment credited in full to reduce the contractor's account with plaintiff on the Grose job, under the facts of this case.

The second question raised by the pleadings is whether or not plaintiff is entitled to recover from defendant, Michigan Surety Co., a reasonable sum for the services of plaintiff's attorney pursuant to the provisions of section 627.0127 of the Florida Statutes of 1959 (section 477 of 59-205, Acts of 1959 Legislature), which provides in part — "Upon the rendition of a . . . decree by any of the courts of this state against an insurer in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial judge shall . . . . decree against the insurer and in favor of the . . . . beneficiary, a reasonable sum as fees . . . for the . . . beneficiary's attorney . . . . ."

The "contract" involved here is labeled "Labor and Materials Payment Bond" wherein the contractor is labeled "Principal", Michigan Surety Co. is labeled "Surety" and E. L. Grose is labeled "Obligee". The document recites that the "Principal" and "Surety" are "firmly bound unto the 'Obligee', for the use and benefit of *Claimants* as hereinafter defined" in a stated amount of money. Thereafter, the document defines a "claimant" as "one having a direct contract with the Principal . . . . for material . . . used . . . in the performance of the contract . . . ." There can be no doubt that plaintiff is such a "claimant".

Under the law in force prior to October 1, 1959 (section 625.08, Florida Statutes of 1957), there may have been some question as to the power of this court to award attorney's fees in this case because of the holding of the Supreme Court of Florida in Main v. Benjamin Foster Co., 192 So. 602, 141 Fla. 91, 126 A.L.R.

1434. However, upon the enactment of House Bill 1626, the 1959 legislature adopted a comprehensive new insurance code, known as the Florida Insurance Code, section 624.01 et seq., and therein defined certain terms which effectively broaden the restricted construction placed on the above-quoted statute in the *Main* case, supra.

Under the Florida Insurance Code, "policy" means the written contract for effecting insurance (627.01011); "insurance" is defined as a contract whereby one undertakes to indemnify another or pay a *determinable benefit* upon *determinable contingencies* (624.02); "insurer" includes every person engaged as indemnitor, *surety* or contractor in the business of entering into contracts of insurance (624.03); and "person" includes company, corporation, etc. (624.04).

Applying the provisions of section 477, of 59-205, Acts of 1959 Legislature (627.0127, F.S. of 1959) to this case, it is apparent that defendant, Michigan Surety Co. is an "insurer" against whom a decree is to be entered under a "policy or contract of insurance". The final remaining question is whether or not plaintiff, who falls within the definition of "claimant" under the *payment bond*, is a "named beneficiary" under such contract.

There would be no question that plaintiff is a "named beneficiary" if the "Carolina Lumber Co., a corporation" had been so named in the contract. There is no question but that the contract (a payment bond) was made for its benefit or that Michigan Surety Co. undertook to pay a "determinable benefit" upon "determinable contingencies". Therefore, this court is of the opinion that so long as the person or corporation, intended to receive the determinable benefits upon the determinable contingencies, can be determined with certainty from the language employed in a contract such as we are now considering wherein "claimant" is clearly defined, such person or corporation is a "named beneficiary" within the provisions of section 477 of said Act.

In reaching the conclusions set forth above, this court is not overlooking the fact that the payment bond issued by defendant, Michigan Surety Co., was executed May 19, 1959 prior to the effective date of the Florida Insurance Code. Language almost identical with that employed in section 477, of 59-205, Acts of the 1959 Legislature, has long been held to be a procedural statute and adds no incident to Florida insurance contracts. It applies only to suits in Florida courts on insurance contracts made anywhere. Its policy is to discourage the contesting of policies in Florida courts and to reimburse plaintiffs reasonably for their outlays for attorneys' fees when suing in Florida courts. See

Fidelity-Phenix Fire Insurance Co. v. Cortez Cigar Co. (C.C.A. 5), 92 Fed. 2d 882. Neither has this court overlooked the constitutionality of the retroactive effect of the Act. There is no vested right in a particular remedy or mode of procedure so that there is no prohibition against the enactment of retroactive laws relating to remedies. See 6 Fla. Jur. 492, Constitutional Law, section 266, also section 282.

Accordingly, it is ordered, adjudged and decreed —

That plaintiff is entitled to recover from Nifong Construction, Inc., a corporation, and Michigan Surety Co., a corporation, the sums of $1,402.90, plus interest, and costs to be taxed upon proper motion and notice at the entry of a final decree herein.

That plaintiff is entitled to recover an additional sum from Michigan Surety Co., a corporation, in the sum of $400, as a reasonable fee for the services of plaintiff's attorney herein.

That counsel for plaintiff shall prepare and present to this court an appropriate final decree and give defendants three days' notice of application for the entry thereof.